# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

|  |  |
|---|---|
| JANE DOE NO. 3,<br><br>     Plaintiff,<br><br>vs.<br><br>MONTANA STATE UNIVERSITY,<br><br>     Defendants. | **CV-20-23-BU-BMM-JTJ**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Jane Doe No. 3 ("Doe") brings this action against Montana State University ("MSU") under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). (Doc. 1). Doe alleges that MSU deficiently responded to sexual assault allegations made by Doe while she and the alleged assailants were students at MSU. *Id*. Doe bases her first claim, entitled "Sexual Harassment/Assault, Deliberate Indifference," on a theory that MSU responded with deliberate indifference to the alleged sexual harassment and assault of Doe.

*Id.* at 11–13. Doe's second claim, "Official Policy/Custom of Discrimination" ("Claim 2"), argues that MSU implemented certain policies or customs that it knew would have disparate negative impacts on female students. *Id.* at 14–19. MSU filed a Motion to Dismiss Claim 2 on September 21, 2020. (Doc. 3 (citing Fed. R. Civ. P. 12(b)(6)).

MSU argues in its Motion to Dismiss that a claim for sex discrimination by official policy or custom under Title IX requires direct proof of intentional sex discrimination, and that Doe's Complaint "does not contain sufficient factual matter to plausibly allege discriminatory intent." (Doc. 4 at 7–13). Doe counters that she need not plead direct evidence of discriminatory intent in the complaint, but may instead make general allegations about MSU's intent. (Doc. 6 at 13–16). Doe alternatively argues that she pleaded sufficient circumstantial evidence from which the Court can make a reasonable inference of discriminatory intent as an element of Claim 2. *Id.* at 16–32. The Court held a hearing on MSU's motion on December 4, 2020.

## FACTUAL BACKGROUND

The Court takes as true the following factual allegations from Doe's Complaint. (Doc. 1). Doe attended a party and consumed alcohol at an MSU fraternity house in late August 2017. *Id.* at 6. Doe planned to sleep in the fraternity's attic, a space often used for guests and games. *Id.* Doe recalls falling

asleep, and upon waking, noticing that she was naked and had been moved to a different part of the attic sleeping space. *Id.* She also noticed that other mattresses in the space had been pulled closer to hers. *Id.* Doe was alone in the attic space when she awoke. She immediately dressed herself and left the fraternity house. *Id.*

Some of Doe's friends later informed her that two male students ("Student B" and "Student C") were with Doe that night. (Doc. 1 at 6–7). The men told other students that they had sexual intercourse with Doe on the night of the party. *Id.* at 7. Doe recalls that Student B and Student C had been in the attic space with her when she fell asleep. *Id.* Doe alleges that she was aware that Student B and Student C have a history of engaging in this sort of activity, and that Student B was, at that time, under investigation by law enforcement for a different sexual assault. *Id.*

Doe reported the assault to campus police. *Id.* Campus police advised Doe that there was little they could do to move her case forward and made no arrest. *Id.* Doe reported the assault to MSU's Office of Institutional Equity ("OIE") following campus police's inaction. *Id.* at 7–8. Emily Stark ("Stark") of OIE informed Doe that OIE's investigation of her case would be completed within three months. *Id.* at 8. Stark told Doe that investigation of her case would not begin, however, until OIE had finished training the person who could handle her case. *Id.* Stark also informed Doe that two other female students had reported being raped by Student B. *Id.*

Doe's initial report had failed to produce any results six months after her first meeting with OIE. *Id.* Student B was still attending MSU, and the school had not taken any disciplinary action against him. *Id.* Doe sought to move her case forward with OIE in November 2017. That same month, Doe attended a meeting with other victims of sexual assault perpetrated by Student B and Student C. One of the victims who attended that meeting, Jane Doe No. 2, has a case against MSU currently pending in this District. Complaint (Doc. 1), *Jane Doe No. 2 v. Montana State University*, (D. Mont. 2020) (Cause No. CV-20-12) (hereinafter, "*Jane Doe No. 2*"). Jane Doe No. 2's Complaint contains substantially similarities allegations against MSU to those alleged by Doe's allegations in this action. *See Jane Doe No. 2*, Doc. 1.

Doe sent a letter to MSU President Waded Cruzado in March 2018, six months after she had been assaulted. (Doc. 1 at 9). Doe stated in the letter that MSU "has continuously failed to promote equality and provide safety for its student[s] who have been victims of sexual assault." *Id.* Doe further noted that OIE and other MSU institutions "have promised outcomes to sexual assault victims who have gone through the emotional and mental draining process of reporting and [MSU has been] unable to deliver any form of effective outcome." *Id.* She conveyed distress for herself and other known victims of sexual assault on MSU's

campus who were forced to negotiate through the "sluggish and ineffective bureaucracy" of MSU and its institutions. *Id.*

OIE never resolved Doe's case. *Id.* at 9–10. Doe alleges this lack of resolution derived from the actions of OIE's representatives in handling her case. *Id.* For example, Doe alleges that Stark advised Doe against filing a formal complaint with OIE. Doe asserts that Stark had deemed the evidence of student misconduct insufficient even before OIE ever had initiated an investigation. *Id.* Doe alleges that Stark informed Doe that  pursuit of a formal complaint could result in potential adverse consequences if the "scales tipped" against Doe during the course of OIE's investigation. Doe contends that Stark cautioned that OIE could find that Doe had violated MSU's code of conduct as a result of its investigation of a formal complaint filed by Doe. *Id.* at 10. Doe grew especially alarmed at this warning as her possible suspension or expulsion from MSU would result in deportation to her native country of Brazil. *Id.* Doe alleges that Stark knew of Doe's citizenship status at the time that Stark attempted to dissuade Doe from filing a formal complaint with OIE. *Id.*

Doe also alleges that, while her initial complaint was pending, Stark divulged the name of another female sexual assault victim on MSU's campus. *Id.* Doe states that the other victim became upset upon learning that Doe knew of her rape. The other victim asked Doe how she had acquired the information. *Id.* Stark

5

pressured Doe to refrain from telling the other victim that Doe had learned the information from OIE. Doe alleges that Stark pressured her presumably out of concern that OIE had violated confidentiality requirements. *Id.*

In Claim 2 of her Complaint, Doe alleges that MSU maintained an official policy or custom of discrimination. (Doc. 1 at 14–19). Doe asserts that MSU adopted and applied these policies with an intent to discriminate against women. *Id.* In support of her allegation that MSU acted with an intent to discriminate, Doe argues that MSU maintains the following official policies or customs: (1) underfunding, understaffing, and inadequately training the OIE; (2) deprioritizing cases in which it most severely denied female students access to educational opportunities or benefits provided by MSU, because those students were compelled to withdraw from school as a result of assault and MSU's failure to adequately respond; (3) dissuading victims from pursuing formal complaints; (4) imposing an unreasonably high burden of proof on alleged victims of sexual assault before pursuing an investigation of a victim's case, exceeding even the burden of proof applied in criminal courts; and (5) violating the confidentiality of sexual assault victims. *Id.* Doe insists that her Complaint includes specific facts that support each of these allegations. (Doc. 6 at 10).

## LEGAL STANDARD

Pleadings must be construed so as to do justice. Fed. R. Civ. P. 8(e). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 9(b) requires particularity in the statement of claim when pleading "fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, may be alleged "generally." *Id.* The United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009), described Rule 9(b)'s use of "generally" as a "relative term," to be viewed in context with the particularity requirement applicable to "fraud or mistake."

Rule 9(b) "excuses a party from pleading [allegations of] discriminatory intent under an elevated pleading standard," as required when pleading fraud or mistake. *Id.* Rule 8(d)(1) provides the standard for pleading *allegations*: "Each allegation must be simple, concise, and direct. No technical form is required." A plaintiff's claim in its entirety still must comply with the "less rigid" plausibility pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 687.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state

a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The complaint must contain enough factual matter to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678-79. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Pleaders must include factual allegations sufficient to raise a right to relief above the speculative level, "on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

## DISCUSSION

I. **Whether the Court may take judicial notice of the companion cases of *Jane Doe No. 1* and *Jane Doe No. 2*.**

Doe requests as an initial matter that this Court take judicial notice of the record in two companion cases currently pending in this District, *Jane Doe No. 1 v. Montana State University*, (D. Mont. 2020) (Cause No. CV-19-54) (hereinafter, "*Jane Doe No. 1*"), and *Jane Doe No. 2*. MSU does not object to Doe's judicial notice request in its motion to dismiss briefing. MSU filed substantially similar

motions to dismiss in *Jane Doe No. 1* and *Jane Doe No. 2*. The Court granted those

motions in respective Orders dated June 24, 2020. *See Jane Doe No. 1*, Doc. 30;

*Jane Doe No. 2*, Doc. 9. MSU attached the Orders as exhibits to its Reply in

Support of its Motion to Dismiss Claim 2 in the present action. (Docs. 11-1 and 11-

2).

District courts generally may not consider materials outside the pleadings

when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

998 (9th Cir. 2018). Rule 201 of the Federal Rules of Evidence acts as one

exception to this general rule. *Id.* Rule 201(b) permits a court to take judicial notice

of a fact not subject to reasonable dispute because it is either: (1) generally known

within the trial court's territorial jurisdiction; or (2) derived from sources whose

accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A document's

susceptibility to judicial notice does not entitle each assertion of fact within that

document to judicial notice of its truth. *Khoja*, 899 F.3d at 999. A court may take

judicial notice of matters of public record when considering a motion to dismiss,

but cannot take judicial notice of disputed facts contained in such public records.

*Id.*

The *Jane Doe No. 1* and *Jane Doe No. 2* companion cases are matters of

public record. Jane Doe No. 3 and MSU made the complaints, briefing on the

motions to dismiss, and the orders granting the motions in these related cases part of the record in this case. The companion cases were filed and contain similar allegations to those of the present case as a matter of fact—without reference to the veracity of the facts contained therein. The *Jane Doe No. 1* and *Jane Doe No. 2* companion cases and the related pleadings are proper subjects of judicial notice, given the fact of their existence and the similarity in allegations to the present case. The Court takes notice of *Jane Doe No. 1* and *Jane Doe No. 2* in its consideration of MSU's Motion to Dismiss Claim 2 (Doc. 3).

## II.    Whether the plausibility pleading standard for claims under Rule 8(a)(2) applies to allegations of discriminatory intent.

Title IX states, in part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Victims may enforce Title IX's protections against sexual discrimination through a private action. *Cannon v. University of Chicago*, 441 U.S. 677, 688–709 (1979). Claim 2 as asserted in Doe's Complaint argues that the inadequate handling of Doe's sexual assault report reflected part of an official MSU custom or policy of committing insufficient resources toward the protection of female MSU students from sex discrimination. (Doc. 1 at 14–17). Doe's Complaint alleges that MSU adopted and applied these official policies and customs with discriminatory intent based upon MSU's

10

knowledge that its deliberate allocation of insufficient resources would have disparate and harmful impacts on women. *Id.*

MSU contends that Doe's pleading in Claim 2 "is replete with conclusions that MSU acted with discriminatory intent." (Doc. 4 at 7 n. 1). MSU argues that these "mere conclusory statements" should not be entitled to the presumption of truth, and that the Court must disregard "Doe's bare conclusions of discriminatory intent." (*Id.* at 7 (citing *Iqbal*, 556 U.S. at 678–79)). MSU asks this Court, in short, to adjudge the intent allegations in Doe's complaint for Rule 8(a)(2) plausibility rather than Rule 9(b) compliance. In doing so, MSU conflates Rule 9(b)'s standard for articulating allegations of intent with *Twombly*'s Rule 8(a)(2) standard for judging the sufficiency of an entire claim. *See* A. Benjamin Spencer, *Pleading Conditions of the Mind Under Rule 9(b): Repairing the Damage Wrought by* Iqbal, 41 Cardozo L. Rev. 1015, 1030 (2020).

Rule 9(b) supplies a "general" pleading standard for allegations related to conditions of the mind. In other words, Rule 9(b) provides to plaintiffs the proper method for articulating an allegation of "malice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). A plaintiff's lack of clarity in the expression of an intent allegation may be resolved by a motion for a more definite statement under Rule 12(e). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that

11

provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.").

The plausibility pleading standard of Rule 8(a)(2) under *Twombly* and *Iqbal*, on the other hand, requires that the factual allegations of a complaint, when viewed together, add up to a claim. *See* Spencer, *supra*, at 1029.  A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a *claim* based on the plausibility standard of *Twombly*. *See Navarro*, 250 F.3d at 732.

Ninth Circuit jurisprudence counsels that a plaintiff's complaint need not plead the discriminatory intent element of a claim. Congress patterned Title IX after Title VI of the Civil Rights Act of 1964 ("Title VI"). *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). The Ninth Circuit has applied Title VI jurisprudence to Title IX claims based upon the similarities in relevant language. *Jeldness v. Pearce*, 30 F.3d 1220, 1227–28 (9th Cir. 1994). The Ninth Circuit has not directly addressed whether the Rule 8(a)(2) pleading standard applies to the intent element of Title IX claims. The Ninth Circuit repeatedly has held, however, that Title VI claimants need not plead intent. *See Fobbs v. Holy Cross Health Sys.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (*overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001)); *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (holding that

12

district court erred by dismissing plaintiff's Title VI claim for failure to plead intent).

MSU insists that the Ninth Circuit decided *Fobbs* many years before the U.S. Supreme Court decided *Twombly*. (Doc. 11 at 4). It contends that the post-*Twombly* decisions cited by Doe "simply recite the *Fobbs* standard without substantively addressing it," and, therefore, do not reflect accurately current Ninth Circuit law. *Id.* MSU states that "Doe fails to cite a *single* case in which an official policy claim was allowed to proceed under Rule 12 absent factual allegations of discriminatory intent." (Doc. 11 at 4–5 (emphasis in original)). MSU believes that it has presented "a wealth of legal authority stating official policy claims must be dismissed, under Rule 12(b)(6), when factual allegations of an intent to discriminate are lacking." (Doc. 11 at 5). MSU fails to acknowledge, however, that it too cites no case arising out of the Ninth Circuit that directly addresses whether a plaintiff must plead additional facts supporting an intent allegation to plausibly state a Title IX official policy claim.

The Court finds unpersuasive MSU's arguments regarding the staleness of *Fobbs*. *Fobbs* and *Monteiro* remain in full effect, despite the later issuance of *Twombly* and *Iqbal*. District courts within the Ninth Circuit have continued to apply *Fobbs* and *Monteiro* to adjudicate motions to dismiss Title VI claims for failing to plead additional facts when alleging intent. *See, e.g.*, *Lanier v. Clovis*

13

*Unified Sch. Dist. Bd. of Educ.*, 2012 WL 1355674, at *7–8 (E.D. Cal. Apr. 18, 2012) (citing *Fobbs* in noting that plaintiff's failure to allege intentional discrimination in complaint not fatal at motion to dismiss phase); *Aguirre v. San Leandro Police Dept.*, 2011 WL 738292, *3 (N.D. Cal. Feb. 22, 2011) (recognizing that showing of intent to discriminate not necessary until trial); *Jones v. Beverly Hills Unified Sch. Dist.*, 2010 WL 1222016, *5 (C.D. Cal. Mar. 24, 2010) (concluding that plaintiff in Title VI claim need only allege that defendant is engaging in discrimination to survive a motion to dismiss). This fact presumably reflects the general pleading standard for allegations of intent that do not necessarily implicate the plausibility pleading standard required to state an entire claim under *Twombly* and Rule 8(a)(2). *See, e.g., Lanier*, 2012 WL at *4, 7–8 (reciting the *Twombly* plausibility pleading requirement for claims under motion to dismiss, but applying the *Fobbs*/*Monteiro* general pleading standard to intent allegations in plaintiff's Title VI claim).

The Ninth Circuit's rule requiring general allegations of intent comports not only with Rule 9(b)'s stated standard, but also the policy embodied by it. The Petition Clause of the First Amendment to the United States Constitution ensures citizens the right of access to courts to redress grievances. *Chambers v. Baltimore & Ohio Railroad Co.*, 207 U.S. 142, 148 (1907). To require a claimant with a legitimate grievance to plead unknowable facts about a defendant's subjective

14

intent at the earliest stage of proceedings operates to bar a claimant from court access. This practice runs afoul of both the Petition Clause of the First Amendment and principles of fairness by elevating a legal system of efficiency over a system of justice. *See, e.g.*, *Twombly*, 550 U.S. at 557–58 ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (citation omitted)).

Both scholars and case law have discussed the importance of principles of procedural fairness in the pleading stage of proceedings. In *Means v. City of Chicago*, 535 F. Supp. 455, 457–58 (N.D. Ill. 1982), the plaintiff, administratrix of the estate of Gary Lee ("Lee"), filed a civil rights action against the city of Chicago ("City"), alleging that the City had deprived Lee of his life without due process of law. One of the plaintiff's claims under 42 U.S.C. § 1983 involved allegations that the City and its police officers, "by their written and de facto policies, regulations, practices and customs of improperly hiring, screening and training officers[;] by failing to discipline these officers for past misconduct[;] and by encouraging officers to use deadly or excessive force, proximately caused the death of [Lee]." *Means*, 535 F. Supp. at 458. The City moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6).

15

The *Means* court stated that the facts of the case were instructive in its determination that the court should consider allegations of a particular policy sufficient, "without insisting on particularized allegations of underlying facts." *Id.* at 460. The plaintiff alleged, "in what some might term simply 'conclusory' allegations," that the City had an official policy that "involved numerous instances of misconduct upon which the City failed to act." *Id.* The plaintiff's complaint could detail only the facts of the incident involving Lee. The facts of that single incident of alleged discrimination would fall short of proving that an official policy existed if the plaintiff were required to allege additional facts. *Id.*

The *Means* court explained, "[w]e are at a loss as to how any plaintiff, including a civil rights plaintiff, is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim, i.e., that there was an official policy or a de facto custom . . . ." *Id.* The court went on to provide that a claim under § 1983 must allege a particular policy or practice that violates the law, but it need not allege the particular events that, when taken together, evidence the alleged policy or practice. *Id.* at 460–61. "The particulars will await discovery, motions for summary judgment, and trial." *Id.* at 461.

MSU repeatedly warned the Court during the hearing on its Motion to Dismiss Claim 2 that a "slippery slope" could result from allowing claims like

16

Doe's to proceed past this initial pleading stage. It argued that good reasons support the high pleading standard in cases of sex discrimination, and that permitting Doe's Claim 2 to survive to the next stage of the proceedings would risk opening a potential floodgate of claims alleging similar instances of sex discrimination against higher learning institutions like MSU. The Court finds these arguments unpersuasive.

Neither Title IX, nor the Federal Rules of Civil Procedure, impose a heightened pleading standard for sex discrimination suits. The Court recognizes that a general pleading standard for allegations of intent could allow more victims who file claims of sex discrimination to proceed on the merits. To expect each plaintiff to unearth smoking-gun evidence about the defendant's subjective state of mind at this stage of litigation heightens the pleading standard for intent beyond "general" to "certain." MSU relies on an assumption that legions of purported victims of sexual assault wait in the wings to allege falsely that MSU maintains an official policy or custom with an intent to discriminate against female students. If this assumption proves accurate, pretrial procedures, flexible discovery rules, and summary judgment practice operate to root out those claims that lack merit. *Swierkiewicz*, 534 U.S. at 512–13.

The dismissal of valid claims of sex discrimination, before the plaintiff can engage in discovery, results in more harm than the possibility of some plaintiffs

whose claims lack merit surviving past the pleading stage of proceedings. Doe has met the pleading standard in Claim 2 by making general allegations of MSU's discriminatory intent.

## III.   Whether Doe, if required to plead additional facts alleging intent, met the plausibility standard.

MSU cites the U. S. Supreme Court decision in *Sandoval*, 532 U.S. at 280, to support its contention that Congress intended to prohibit only intentional discrimination, not disparate impact discrimination, under Title IX. (Doc. 4 at 6). MSU argues that Doe was required to plead with specificity direct evidence of discriminatory intent, such as evidence "that a university official said or committed some act demonstrating a specific animus toward females." (Doc. 4 at 8). The Court recognizes, however, that discrimination most often arises through "discreet manipulations," usually "hidden under a veil of self-declared innocence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991). A victim of discrimination can seldom prove his or her claim of discrimination by direct evidence, as perpetrators of discrimination rarely leave "smoking gun" evidence attesting to discriminatory intent. *Id.* Such victims usually find themselves constrained to reliance on the cumulative weight of circumstantial evidence. *Id.*

Contrary to MSU's assertion, a court may infer discriminatory intent from circumstantial evidence at the pleading stage, given the plaintiff's limited insight into the subjective mental state of a defendant. *Rogers v. Lodge*, 458 U.S. 613, 618

(1982) (stating that "discriminatory intent need not be proved by direct evidence");

*Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Although the Court has

determined that Doe need not include more than general allegations of intent in her

complaint, a review of the record indicates that Doe has provided sufficient

circumstantial evidence to support a plausible inference of discriminatory intent.

Doe alleges that OIE waited months to investigate her claim. Doe alleges

that Stark told Doe that OIE's investigation of Doe's case would face delays

because OIE needed to complete its training of a new investigator. Stark later

attempted to dissuade Doe from filing a formal complaint by telling her that

insufficient evidence of sexual assault existed. Doe alleges that OIE threatened that

Doe's pursuit of a formal complaint could result in Doe's punishment. *Jane Doe*

*No. 1* involved similar allegations. Doe No. 1 states that she met with OIE in

September 2018 to discuss OIE's investigation process and to provide an overview

of her sexual assault allegations against "Student A." (*Jane Doe No. 1*, Doc. 1 at

5). Student A graduated from MSU in May 2019, with no consequences and while

OIE's investigation remained pending, nearly eight months after Doe No. 1

formally had met with OIE. (*Id.*, Doc. 1 at 8). Doe No. 1 states that OIE did not

conclude its final investigation until July 2019. *Id.* OIE determined that insufficient

evidence existed to indicate that Student A had violated MSU's policies, despite

evidence to the contrary. (*Id.*, Doc. 1 at 8–9). OIE's Stark issued a non-finding against Student A in August 2019. (*Id.*, Doc. 1 at 9).

*Jane Doe No. 2* also involves similar allegations. Doe No. 2 submitted substantial evidence to OIE that she had been sexually assaulted by Student B, the same student involved in the present assault allegations. (*Jane Doe No. 2*, Doc. 1 at 6–9). OIE took over six months to issue its final report, in which it found that "insufficient information [existed] to show that sexual activity occurred which would violate MSU's Policy." (*Id.*, Doc. 1 at 12).

Doe's allegations prove probative of intentional sex discrimination. MSU's alleged imposition of extraordinarily high burdens of proof on victims of sexual violence and harassment, with correspondingly modest sanctions on perpetrators, constitutes plausible evidence of institutionalized sex discrimination against women through MSU's official policies or customs.

Doe also alleges that MSU knowingly and intentionally allocated insufficient resources and inadequate training to OIE. Doe alleges that MSU knew that these actions disproportionately would harm women. In an OIE report that Doe obtained from another sexual assault investigation, OIE admits that it has inadequate resources and staffing to handle its caseload. (Doc. 1 at 15). It is reasonable to infer that MSU knew that underfunding, understaffing, and poorly training the OIE would have a disproportionate adverse impact on women, as "[i]t

is a simple fact that the majority of accusers of sexual assault are female and the

majority of the accused are male, therefore enforcement is likely to have a

disparate impact on the sexes." *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214,

1225 (D. Or. 2016), *aff'd by Austin v. Univ. of Oregon*, 925 F.3d 1133, 1139 (9th

Cir. 2019). With this knowledge, MSU nevertheless allegedly proceeded to fund

and staff the OIE inadequately. Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No.

3 each allege that they experienced similar delays in the investigation of their

reports, evidencing that MSU's underfunding and understaffing of OIE resulted in

harm to numerous women.

Doe's allegations of disparate impacts on women support an inference of

discriminatory intent, particularly when viewed in conjunction with the additional

evidence of intent that Doe has alleged. *See Arlington Heights v. Metropolitan

Housing Corp.*, 429 U.S. 252, 264–67 (1977). The U.S. Supreme Court recognized

in *Arlington Heights* that "[d]etermining whether invidious discriminatory purpose

was a motivating factor demands a sensitive inquiry into such circumstantial and

direct evidence of intent as may be available." *Id.*  The Supreme Court understood

that disparate impacts "may provide an important starting point" in making this

determination. *Id.*

As mentioned above, Doe's Complaint quotes a final report issued by OIE in

another sexual assault investigation. OIE admits in the report to having

deprioritized investigation of cases that involve students who have withdrawn from the University. (Doc. 1 at 15). MSU argues that this admission differentiates between students based on active and inactive status, not on gender. (Doc. 4 at 8–9). MSU again ignores the reality that women disproportionately are the victims of sexual violence and harassment, and that men disproportionately are the perpetrators. *See Austin*, 205 F. Supp. 3d at 1225.

Title IX imposes a duty on recipients of federal funding to prevent individuals from exclusion from participation in, or denial of the benefits of, an institution's educational programming on the basis of sex. 20 U.S.C. § 1681. Sexual assault victims who are forced to withdraw from an educational institution, as a result of the institution's failure to provide effective remediation, are prevented from participating in, and receiving the benefits of, the institution's educational programming. Given that victims of sexual assault are overwhelmingly female, the Court reasonably can infer, as alleged by Doe, that MSU adopted with discriminatory intent an official policy of deprioritizing sexual assault investigations involving students who have withdrawn from MSU.

The cumulative weight of the circumstantial and direct evidence supplied by Doe supports an inference of discriminatory intent on the part of MSU. Doe's Complaint sufficiently pleads non-conclusory factual allegations from which the

Court can plausibly infer that MSU has official policies or customs that discriminate against women.

### ORDER

Accordingly, **IT IS ORDERED** that MSU's Motion to Dismiss Claim 2 (Doc. 3) is **DENIED**.

Dated this 21st day of December, 2020.

Brian Morris, Chief District Judge
United States District Court